UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **PETER RAPTIS,**<br>Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**DPS LAND SERVICES, LLC,**<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | DOCKET NO. ___19-1262___<br><br><br>**CLASS ACTION**<br>**PURSUANT TO FED. R. CIV. P. 23**<br><br>**COLLECTIVE ACTION**<br>**PURSUANT TO 29 U.S.C. § 216(b)** |

**CLASS ACTION AND COLLECTIVE ACTION COMPLAINT**

**I.   SUMMARY**

1. Plaintiff Peter Raptis brings this lawsuit against DPS Land Services, LLC to recover unpaid overtime wages and other damages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104.

2. Raptis and the other workers like him regularly worked for DPS in excess of 40 hours each week.

3. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA, DPS paid these workers a daily rate with no overtime pay while sometimes improperly classifying them as independent contractors and sometimes classifying them as W2 employees. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

5. Plaintiff worked with numerous individuals who performed similar job duties and were subjected to the same illegal compensation practices which denied Plaintiff overtime as required by

the FLSA and PMWA. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers who worked for DPS.

## II. Jurisdiction and Venue

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b). The Court also has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

7. Venue is proper under 28 U.S.C. §§ 1391 (b) and (c) because DPS operates in this District and Division with a corporate office in Canonsburg, Pennsylvania. Also, a substantial part of the events giving rise to this claim occurred in this District and Division with DPS' Land Men, including Raptis working throughout Western Pennsylvania.

## III. The Parties

8. Raptis worked exclusively for DPS as a Land Man during the relevant statutory time period. Throughout his employment with DPS, Raptis was paid a day rate with no overtime compensation and was sometimes classified as an independent contractor and sometimes classified as a W2 employee. Raptis's written consent is attached as Exhibit A.

9. Raptis brings this action on behalf of himself and all other similarly situated Land Men who worked for or on behalf of DPS and did not receive overtime for hours worked in excess of forty (40) in a workweek. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **ALL CURRENT AND FORMER LAND MEN WHO WORKED FOR OR ON BEHALF OF DPS AND WHO WERE PAID A DAY-RATE DURING THE LAST THREE (3) YEARS.** ("Putative Class Members")

10. Plaintiff also seeks class certification of this class under Fed. R. Civ. P. 23 under the

PMWA ("PMWA Class").

11. The Putative Class Members are easily ascertainable from DPS' business records, particularly personnel records.

12. DPS may be served through its corporate officers: Vice President Tim Schultz or Vice President David Haskins at DPS' corporate office at **6000 Town Center Blvd., Suite 145, Canonburg, PA 15317.**

### IV. COVERAGE UNDER THE FLSA

13. At all times hereinafter mentioned, DPS has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14. At all times hereinafter mentioned, DPS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

15. At all times hereinafter mentioned, DPS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

16. At all times hereinafter mentioned, Raptis and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

17. DPS treated Raptis and the Putative Class Members as employees and uniformly dictated the pay practices to which Raptis and its other employees (including its so-called "independent contractors") were subjected.

18. DPS' periodic misclassification of Plaintiff and the Putative Class Members as

independent contractors does not alter their status as employees for purposes of the FLSA or the PMWA.

### V. FACTS

19. DPS describes itself as a "full-service land company that is dedicated to the Appalachian Basin."[1]

20. DPS describes its work as "a diverse range of assignments including obtaining ROW [Right of Way] for a gathering system in a complex urban environment and managing multifaceted, large scale title and land projects." See *id*.

21. DPS operates throughout the United States, including Pennsylvania and Ohio. To complete their business objectives, DPS hires personnel to perform its necessary work.

22. DPS land men are required to assist DPS in acquiring property to expand DPS' network of services and to identify easements, rights-of-way to permit them to operate, and oil and gas leases.

23. Many of these individuals worked for DPS as "independent contractors" on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ,[2] these employees are subjected to the same or similar illegal pay practices for similar work.

24. For example, Raptis worked exclusively for DPS from approximately March 2017 to August 20, 2019 as a land man performing duties as a "Leasing Agent." Throughout his employment with DPS, he was classified both as an independent contractor and as a W2 employee but always paid on a day-rate basis. Raptis was never paid on a salary basis. He never received any guaranteed weekly compensation from DPS irrespective of days worked (i.e., the only compensation he received was the day-rate for each day that he actually worked).

---

[1] See http://www.dpslandservices.com/index.php (last visited October 2, 2019).

[2] Other related job titles include: Leasing & Mineral Purchasing Agent, Abstractor, Leasing Agent, Mineral Buyer, Title Professional, and Curative Agent.

25. Raptis and the Putative Class Members worked for DPS in the Commonwealth of Pennsylvania, Ohio and throughout the United States over the past three years as independent contractors and employees.

26. Raptis and the Putative Class Members were subjected to the same illegal pay practice for similar work.

27. Specifically, DPS paid Raptis and the Putative Class Members a day rate, regardless of the number of hours that they worked each day (or in a workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

28. The day to day activities of the Putative Class Members were conducted within designated parameters defined by DPS.

29. Raptis and the Putative Class Members worked well in excess of 40 hours each week while employed by DPS.

30. The work Raptis and the Putative Class Members performed was an essential part of DPS' core business.

31. During Raptis' employment with DPS while he was classified both as an independent contractor and a W2 employee, DPS exercised control over all aspects of his job. DPS did not require any substantial investment by Raptis for him to perform the work required of him.

32. Raptis was not required to possess any unique or specialized skillset (other than that maintained by all other land men) to perform his job duties.

33. DPS determined Raptis' opportunity for profit and loss.

34. Indeed, DPS controlled all the significant or meaningful aspects of the job duties performed by Raptis.

35. DPS ordered the hours and locations Raptis worked, the equipment and forms he used, and the rates of pay he received.

36. DPS controlled all aspects of Raptis' job activities by enforcing mandatory compliance with DPS' policies and procedures.

37. No real investment was required of Raptis to perform his job. More often than not, Raptis utilized equipment provided by DPS to perform his job duties.

38. Raptis did not provide the equipment he worked with on a daily basis.

39. DPS made the large capital investments in buildings, tools, and supplies in the business in which Raptis worked.

40. Raptis did not incur operating expenses like rent, payroll and marketing.

41. Raptis was economically dependent on DPS during his employment.

42. DPS set Raptis' rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for DPS.

43. DPS directly determined Raptis' opportunity for profit and loss. Raptis' earning opportunity was based on the number of days DPS scheduled him to work and the assignments he was provided.

44. Very little skill, training, or initiative was required of Raptis to perform his job duties.

45. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by DPS.

46. Virtually every job function was pre-determined by DPS, including the tools used, the data to research and compile, the work schedule, and related work duties.

47. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters. Moreover, the job functions of the Putative Class Members were primarily technical in nature, requiring little to no official training, much less a college education or other advanced degree.

48. The Putative Class Members did not have any supervisory or management duties.

49. For the purposes of their overtime claims, the Putative Class Members performed substantially similar job duties related to servicing DPS' core business.

50. Raptis performed routine duties that were largely dictated by DPS.

51. Raptis worked exclusively for DPS from approximately March 2017 to August 2019 as an independent contractor and W2 employee.

52. Raptis was not employed by DPS on a project-by-project basis.

53. In fact, while Raptis was classified as an independent contractor, he was regularly on call for DPS and was expected to drop everything and work whenever needed.

54. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

55. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Putative Class Members all worked in excess of 40 hours each week. Instead of paying them overtime, DPS paid the Putative Class Members a day-rate. DPS denied Raptis and the other Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

56. DPS' policy of failing to pay its workers, including Raptis, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

57. Because Raptis (and DPS' other independent contractors) were misclassified as independent contractors by DPS, he and the Putative Class Members should receive overtime for all hours that they worked in excess of 40 hours in each workweek.

58. DPS' day-rate system violates state and federal law because Raptis and the other land men did not receive any pay for hours worked in excess of 40 hours each week.

## VI.     FLSA VIOLATIONS

59.     As set forth herein, DPS violated the FLSA by failing to pay Raptis and the Putative Class Members overtime for hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 207(a).

60.     DPS knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Raptis and the Putative Class Members overtime compensation. DPS' failure to pay overtime compensation was neither reasonable, nor was the decision not to pay overtime made in good faith.

61.     Accordingly, Raptis and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their regular rate of pay, plus liquidated damages, attorney's fees and costs.

## VII.    PMWA ALLEGATIONS

62.     DPS is subject to the overtime requirements of the PMWA because DPS is an employer under 43 P.S. § 333.103(g).

63.     During all relevant times, Raptis and the PMWA Class were covered employees entitled to the above-described PMWA's protections.  See 43 P.S. § 333.103(h).

64.     DPS' compensation scheme that is applicable to Raptis and the PMWA Class failed to comply with either 43 P.S. § 333.104(c) or 34 Pa. Code § 231.43(b).

65.     At all relevant times, DPS was subject to the requirements of the PMWA.

66.     At all relevant times, DPS employed Raptis and each Class Member with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

67.      The PMWA requires employers like DPS to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Raptis and each member of the Pennsylvania Class are entitled to overtime pay under the PMWA.

68. DPS has and had a policy and practice of frequently misclassifying Raptis and each member of the Pennsylvania class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

69. Raptis and each member of the Pennsylvania Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

70. Raptis and each member of the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the PMWA.

## VIII.   CLASS AND COLLECTIVE ACTION ALLEGATIONS

71. Raptis incorporates all previous paragraphs and alleges that the illegal pay practices DPS imposed on Raptis were likewise imposed on the Putative Class Members.

72. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and PMWA.

73. Numerous other individuals who worked with Raptis indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

74. Based on his experiences and tenure with DPS, Raptis is aware that Defendant's illegal practices were imposed on the Putative Class Members.

75. The Putative Class Members were all sometimes improperly classified as independent contractors and sometimes W2 employees but never afforded the overtime compensation when they worked in excess of forty (40) hours per week.

76. DPS' failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

77. Raptis' experiences are therefore typical of the experiences of the Putative Class Members.

78. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

79. Raptis has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Plaintiff has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

80. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

81. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and DPS will reap the unjust benefits of violating the FLSA and applicable state labor laws.

82. Furthermore, even if some of the Putative Class Members could afford individual litigation against DPS, it would be unduly burdensome to the judicial system.

83. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

84. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether DPS employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and PMWA;

   b. Whether the Putative Class Members were improperly misclassified as independent contractors;

   c. Whether DPS' decision to classify the Putative Class Members as independent contractors was made in good faith;

   d. Whether DPS' decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   e. Whether DPS' violation of the FLSA and PMWA was willful; and

   f. Whether DPS' illegal pay practices were applied uniformly across the nation to all Putative Class Members.

85. Raptis' claims are typical of the claims of the Putative Class Members. Raptis' and the Putative Class Members sustained damages arising out of Defendant's illegal and uniform employment policy.

86. Raptis knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

87. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## IX. JURY DEMAND

88. Raptis demands a trial by jury.

## RELIEF SOUGHT

89. WHEREFORE, Raptis prays for judgment against DPS as follows:

   a. An Order certifying a Rule 23 class action on behalf of all land men who worked for DPS in Pennsylvania;

b. Judgment awarding Raptis unpaid back wages and for liquidated damages equal in amount to the unpaid compensation found due to Raptis;

c. Judgment awarding Raptis and the PMWA Class all unpaid overtime and other damages available under the PMWA;

d. For an Order awarding Raptis and the PMWA Class their costs of this action;

e. For an Order awarding Raptis and the PMWA Class their reasonable attorneys' fees and expenses as provided by the FLSA and PMWA;

f. Pre- and post-judgment interest at the highest rate allowable by law; and

g. All such other and further relief to which Raptis and the other land men may show themselves to be justly entitled.

Respectfully submitted,

By: /s/ *Michael A. Josephson*

**Michael A. Josephson**
Pennsylvania Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
*(Pending Pro Hac Vice)*
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
*(Pending Pro Hac Vice)*
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

rburch@brucknerburch.com

**AND**

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**